# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

ARYAN D. NEAL,                                    )
                                                  )
        Petitioner,                        )
                                                  )
    vs.                                        )     Case No. 13-0548-CV-W-HFS-P
                                                  )
LARRY DENNEY,                                     )
                                                  )
        Respondent.                        )

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
## AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Aryan D. Neal, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 17, 2013, seeking to challenge his 2006 convictions and sentences, in three separate cases, for three counts of second degree murder, five counts of armed criminal action, and two counts of first degree assault, which were simultaneously entered pursuant to guilty pleas, in the Circuit Court of Jackson County, Missouri.

The petition raises six grounds for relief: (1) that plea counsel was ineffective for misrepresenting certain pretrial information, thereby unduly influencing petitioner to plead guilty; (2) that plea counsel was ineffective for creating an actual conflict of interest relating to petitioner's Rule 29.07 motion to withdraw a guilty plea; (3) that plea counsel was ineffective for failing to advise petitioner on his right to appeal the trial court's denial of his Rule 29.07 motion; (4) that plea counsel was ineffective by being unprepared for trial, and by coercing petitioner to plead guilty; (5) that plea counsel was ineffective for failing to adequately investigate petitioner's case, and for failing to share discovery information with petitioner; and (6) that plea counsel was ineffective for misrepresenting certain other pretrial information, thereby unduly influencing petitioner to plead guilty.

Respondent contends that the state court's findings on ground 1 were not unreasonable, and that ground 2 is meritless, therefore both grounds should be denied. Additionally, Respondent contends that grounds 3, 4, 5, and 6 are procedurally defaulted.

## SUMMARY OF THE FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> This appeal arises from Neal's pleas of guilty to multiple criminal charges arising out of three separate criminal escapades.
>
> In 16CR03001082, ("the First case"), Neal was charged as a prior and persistent offender with one count of the class A felony of murder in the first degree, one count of the class A felony of murder in the second degree, one count of the class A felony of assault in the first degree, and three counts of the unclassified felony of armed criminal action in connection with criminal conduct that occurred on or about January 9, 2002.
>
> In 16CR04002413, ("the Second case"), Neal was charged with one count of the class A felony of murder in the second degree and one count of the unclassified felony of armed criminal action in connection with criminal conduct that occurred on or about January 16, 2002.
>
> In 0616-CR00872, ("the Third case"), Neal was charged with one count of the class A felony of assault in the first degree and one count of the unclassified felony of armed criminal action in connection with criminal conduct that occurred on or about September 11, 2005 while Neal was in the Jackson County jail.
>
> As will become apparent, only the facts relating to the First case are implicated by this appeal. In summary fashion, on January 9, 2002, Neal acted in concert with Brian Little ("Little"), Richard Johnson ("Johnson"), and Fernando Fernandez ("Fernandez"), in planning the robbery of two men and a woman (collectively, "the Victims") who intended to purchase twenty pounds of marijuana for $10,000. During the robbery, there was a shooting which resulted in the death of the two men and injury to the woman. Neal participated in the shooting using a twelve-gauge shotgun. One of the two men killed during the robbery died from shotgun wounds.
>
> On April 3, 2006, Neal entered guilty pleas in all three cases pursuant to a collective plea agreement. The State agreed to amend

the charge of murder in the first degree to murder in the second degree in the First case. In the Third case, the State agreed to amend the charge of assault in the first degree from an A felony to a B felony, to recommend a sentence of ten years on the assault charge, and to recommend a sentence of three years on the armed criminal action charge. The State did not agree to amend the charges in the Second case. Except as noted, the State required an open plea on all charges, but agreed that all sentences would run concurrently.

In entering his guilty pleas Neal testified that he understood all the charges pending against him; that he was pleading guilty pursuant to the plea agreement; that he understood the terms of the plea agreement; that he understood that he was facing a possible life sentence on the murder in the second degree counts; that he understood the range of punishment for all of the charges; that he had no complaints with respect to the representation of his trial counsel; and to the factual basis for all of the charges.

On July 7, 2006, Neal appeared for a sentencing hearing. At that time, Neal made a *pro se* request to withdraw his guilty pleas and to proceed to trial. Neal said he wished to withdraw his guilty pleas because he did not know he was facing a possible life sentence. The trial court asked Neal whether this was the only reason he wanted to withdraw his pleas. Neal answered in the affirmative. The trial court denied Neal's request, as it was facially negated by the record taken at the guilty plea hearing. The trial court proceeded with the sentencing hearing, taking testimony from the State's witnesses. The trial court agreed to hear testimony from Neal's witnesses on August 10, 2006.

On July 17, 2006, Neal submitted a handwritten motion [f.n. 1] renewing his request to withdraw his guilty pleas. Neal abandoned his claim that he had not been advised that he faced a life sentence, and now claimed that he should be permitted to withdraw all of his guilty pleas because (1) trial counsel told him that he took depositions of the co-defendants in the First case when the depositions were taken by a different attorney in the case pending against co-defendant Dominick Clarkson ("Clarkson") [f.n. 2]; (2) trial counsel informed Neal that he had been positively identified in the deposition of co-defendant Johnson as the shooter in the First case, when (according to Neal) Johnson did not so testify; and (3) that he had not received discovery on the Second case.

> [f.n. 1] This motion is not included in the record on appeal.

[f.n. 2] Clarkson was involved in orchestrating the plan to rob the Victims.

Neal was examined by the court about his allegations. Neal was then cross-examined by the State. At the conclusion of the State's cross-examination, Neal's trial counsel, Willis Toney ("Toney") inquired of Neal. Toney commenced his examination of Neal as follows:

> Q: Mr. Neal, you understand that you are placing me as your lawyer in a very awkward position at this point, right? We have talked about that?
>
> A: Yes.

Thereafter, Neal acknowledged that co-defendant depositions taken in Clarkson's case would have involved discussion of the same events for which Neal had been charged. Neal acknowledged that Toney had read portions of Johnson's deposition to him in advance of his guilty pleas. Specifically, Neal acknowledged that Toney read the portions of the deposition where Johnson identified a person named "Dex" as the shooter in the First case. Neal agreed that Johnson testified that he understood "Dex" to be the street name for Aryan Neal [f.n. 3]. Neal also agreed that Toney informed him that Johnson had agreed to testify against Neal pursuant to a plea agreement. Notwithstanding, Neal maintained that Johnson did not "positively" identify him because there was no paperwork demonstrating that Johnson had pointed Neal out in a lineup. After Neal finished testifying, Toney tried to call Neal's mother as a witness, but she refused to cooperate and would not take the stand.

> [f.n. 3] Neal stressed the distinction between Johnson identifying a person named "Dex" not "Dax." Although not explained at the sentencing hearing, Neal testified at the post-conviction hearing that his middle name is Dax.

The State then called Toney to testify. At the conclusion of the State's direct examination, Toney was cross-examined by Neal. Toney testified that he had advised Neal that the only way the State would agree to reduce his first degree murder charge in the First case to a second degree murder charge was if Neal pled guilty in all three of the cases pending against him. Neal asked "Do you think that was a very intelligent plea?" Toney responded "I think it was a

very smart plea because I think the evidence against you on the [First case] is overwhelming, and if you go to trial on it you are going to get life without parole" [f.n. 4]. Toney also testified that he does not leave copies of depositions with his incarcerated clients to protect his clients from having other inmates use information against his clients. Neal questioned Toney about the disposition of the charges against his co-defendants, suggesting Neal believed his co-defendants had not been treated as harshly as his plea agreement would require.

> [f.n. 4] The "overwhelming" evidence included the anticipated testimony by the female Victim that Neal was the shooter.

The trial court found:

> Frankly, there is no basis that I can find to set aside your pleas. I remember personally asking you the questions extensively in your plea. I think you are a little confused on what happened to the other defendants, and I suspect maybe you wouldn't be filing this if you didn't think their cases were dismissed, but they weren't. It is my understanding they are doing federal time or doing other time, so that wasn't exactly the result that you may think happened. Nobody got acquitted there of anything.

> You know, I have to agree with [your counsel] too. He actually did an outstanding job for you because from what I have heard and seen these are cold-blooded murders that the State could have possibly proceeded on murder one. He did a good job on your behalf. You are lucky you are not sitting here looking at life without parole.

> I overrule your motion to set aside the plea. We are going to continue with the sentencing. This plea is over.

The trial court sentenced Neal in the First case to life on both second degree murder counts, and fifteen years on each of the other counts. In the Second case, Neal was sentenced to life on the second degree murder count and fifteen years on the armed criminal action count. In the Third case, Neal was sentenced to fifteen years on the assault charge and three years on the armed criminal action charge [f.n. 5].

All sentences were ordered to run concurrently.

> [f.n. 5] The judgment reflects that Neal was sentenced to fifteen years on a class A felony of assault but the record reflects that the charge was amended to a class B felony on the day the guilty plea was entered. Although not found in the record on appeal, per Case.net, on January 15, 2009, the judgment was amended to reflect that Neal was sentenced to ten years for the class B assault, consistent with the articulated plea agreement.

Neal timely filed a pro se Rule 24.035 motion. Post-conviction counsel filed an amended motion. Thereafter, Neal filed a pro se motion asserting additional claims that post-conviction counsel failed to include in the amended motion. Post-conviction counsel filed a motion conceding abandonment because the amended motion failed to include all of Neal's pro se claims. The motion court ordered a revised amended motion to be filed within fourteen days. Post-conviction counsel filed a second amended motion alleging, among other claims, the claims that are raised in this appeal: that Toney was ineffective in (a) failing to support Neal's motion to withdraw his guilty pleas and not remaining silent regarding same, and (b) affirmatively misinforming Neal that Johnson identified him as the shooter in the First case and would testify against Neal [f.n. 6].

> [f.n. 6] We note two out of three of the claims referenced in Neal's pro se motion complaining about the content of the amended motion were not initially raised in Neal's pro se Rule 24.035 motion. The previously unasserted claims were that Toney failed to advise Neal regarding his right to appeal the trial court's denial of his motion to withdraw his guilty pleas and that Toney mislead Neal in advising that Neal and Johnson had the same plea agreement with the State. Neither of these claims was included in the post-conviction counsel's second amended motion. Neal thus filed another pro se motion complaining about the exclusion of these claims. The record does not reflect the disposition of this motion. Neal has not raised this issue on appeal, however, and has abandoned any claim of error associated with the scope of the claims raised in the second amended motion.

A hearing on Neal's Rule 24.035 motion was held on July 10, 2009. Neal testified that Toney brought him Johnson's deposition approximately two weeks prior to trial and showed him certain portions. Neal stated he was not given a copy of the deposition to keep until after he entered his guilty pleas. Upon his review of the deposition after the guilty plea hearing, Neal claimed that he determined that the deposition did not reflect, as Toney had represented, that Johnson positively identified Neal as the shooter. Neal testified that because Toney misrepresented Johnson's anticipated testimony in the First case, he wanted to withdraw his guilty pleas in all three cases.

On cross-examination, Neal admitted that when Toney visited Neal at the jail with Johnson's deposition, Toney specifically pointed out where Johnson stated that he and "Dex" were shooting at the Victims' vehicle and that Dex had a shotgun. Neal testified that his middle name is Dax. Neal also admitted that he understood prior to his plea that in addition to Johnson, Fernandez and Little were also prepared to testify against him.

Toney testified at the post-conviction hearing and in a deposition taken prior to the evidentiary hearing. Toney testified that Neal's friends and family call him Dax; that he took Johnson's deposition over to the jail and reviewed it with Neal; that he did not leave it with Neal so that it would not be used by someone else; that Neal was involved in the plea negotiations and joined him at the prosecutor's office to review the evidence; and that the co-defendants including Johnson had agreed to testify against Neal.

On October 19, 2009, Neal filed a motion to reopen evidence. Attached to the motion was an affidavit from Johnson. In the affidavit Johnson asserted that while serving a fifteen-year sentence in prison, he was shown a picture by an unidentified individual who claimed the picture was of a person with the nickname of "Stacc" whose real first name was "funny" and his last name was either "Beal" or "Neal." The affidavit stated that *if* the person in the picture was Neal, then Neal was not the shooter. The affidavit also stated that Johnson was never shown any type of line-up. The motion court granted Neal's motion and permitted an additional evidentiary hearing on June 11, 2010. At that time, post-conviction counsel requested the motion court's consideration of Johnson's affidavit.

On January 14, 2011, the motion court entered its judgment denying Neal's Rule 24.035 motion.

(Doc. No. 6, Ex. 9, pp. 2-9).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record.   Marshall v. Lonberger, 459 U.S. 422, 432 (1983).   Credibility determinations are left for the state court to decide.   Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984).   It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous.   28 U.S.C. § 2254 (e)(1).[1]   Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

### GROUNDS 1 & 2 – INEFFECTIVE ASSISTANCE OF COUNSEL

In ground 1, petitioner contends that plea counsel was ineffective for misrepresenting discovery and testimony information which induced petitioner to plead guilty, where otherwise he would have exercised his right to a jury trial.   In ground 2, petitioner contends that plea counsel was ineffective for acting improperly during the withdrawal of guilty plea hearing based on ineffective assistance of counsel, thereby creating a conflict of interest between plea counsel and petitioner.   In order to succeed on his claim of ineffective assistance of counsel, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   Hill v. Lockhart, 474 U.S. 52, 59 (1985).

---

[1]"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.   The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1).

Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. 668, 687-90 (1984).

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . ." Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of his Rule 24.035 motion, the Missouri Court of Appeals disposed of petitioner's claims as follows:

### Standard of Review

Appellate review of the disposition of a motion filed pursuant to Rule 24.035 is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 24.035(k); *Krider v. State*, 44 S.W.3d 850, 856 (Mo. App. W.D. 2001). "The motion court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, [we are] left with a definite and firm impression that a mistake has been made." *Krider*, 44 S.W.3d at 856. "The burden of proof is upon Movant to establish grounds for relief by a preponderance of the evidence." *Briley v. State*, 180 S.W.3d 514, 516 (Mo. App. S.D. 2005).

### Analysis

Neal asserts two points on appeal. First, Neal claims that Toney had a conflict of interest because he acted contrary to Neal's interests by cross-examining Neal, and by testifying against Neal, on Neal's claim that Toney coerced him into pleading guilty by misrepresenting Johnson's deposition, and that in the course of doing so, Toney divulged confidential client communications. Neal

claims that but for Toney's conduct, there is a reasonable probability the trial court would have granted his request to withdraw his guilty pleas. Second, Neal claims that his guilty pleas were not knowing and voluntary because Toney affirmatively misrepresented that Johnson would identify Neal as the shooter in the First case.

Our discussion of these two points is necessarily intertwined, as the source of the conflict of interest raised in Neal's first point on appeal is Neal's assertion that Toney afforded ineffective assistance of counsel by misrepresenting that Johnson positively indentified [sic] Neal as the shooter in his deposition. We begin our discussion, therefore, with an analysis of Neal's second point on appeal.

## Point II

Neal claims that his guilty pleas were unknowing and involuntary because Toney affirmatively misrepresented that Johnson positively identified him as the shooter in his deposition. Neal claims that had he known that Johnson could not positively identify him as the shooter, Neal would not have pled guilty but would have exercised his right to a jury trial. Neal's point is without merit.

"[A] guilty plea must be a voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *State v. Roll*, 942 S.W.2d 370, 375 (Mo. banc 1997). Once a guilty plea is entered, all claims that counsel was ineffective are waived, "except to the extent that the conduct affected the voluntariness and knowledge with which the plea was made." *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005).

The plea process in a criminal adjudication warrants the same constitutional guarantee of effective assistance of counsel as trial proceedings. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). To prevail on an ineffective assistance of counsel claim following a guilty plea, Neal must show by a preponderance of the evidence that: (1) Toney's performance was deficient because he failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) the deficient performance prejudiced Neal. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997).

To satisfy the performance prong, Neal must show by a

preponderance of the evidence that Toney's actions fell below an objective standard of reasonableness. *State v. Stacker*, 357 S.W.3d 300, 304 (Mo. App. S.D. 2012). Reasonableness is looked at in light of all of the circumstances and of the prevailing professional norms at the time of the alleged error. *Strickland*, 466 U.S. at 688-89. Neal "must overcome the presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance [of counsel, making] all significant decisions in the exercise of professional judgment." *Simmons*, 955 S.W.2d at 746.

In *Strickland*, the Supreme Court articulated the standard for prejudice, stating that a defendant must show a reasonable probability that, but for counsel's alleged deficiencies, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

If either the performance prong or the prejudice prong is not met, then we need not consider the other, and Neal's claim of ineffective assistance of counsel must fail. *Id.* at 687.

At the evidentiary hearing on Neal's Rule 24.035 motion, Johnson's deposition was admitted into evidence. The transcript of Johnson's deposition provides his account of what occurred on the evening of January 9, 2002. Johnson stated that he was hanging out at the home of Clarkson when a person known as "Dex" arrived. Little and Fernandez were also present. Dex advised the others that he wanted to rob the Victims who were coming to purchase twenty pounds of marijuana. Johnson stated that Dex was armed with a twelve-gauge shotgun. Johnson testified that because the Victims were coming to Clarkson's house to buy marijuana, Clarkson was concerned that the robbery be staged to avoid the Victims' retaliation. Regarding Dex's identity, the following exchange took place:

Q. Do you know what Dex's name is?

A. They referred to him as Arion O'Neal [sic], but I have not -- I haven't seen-- I haven't seen that person since that day. And before that day, we were never close or nothing like that. I probably had seen him maybe once or twice before, but I don't know if this is exactly the same person, so I don't know.

Q. You didn't hang out with Dex before that day?

A. No, sir.

Q. You didn't know him very well?

A. No, sir, I didn't know him at all.

As part of the plan, Johnson testified that he and Dex hid in the back seat of Little's car behind Clarkson's house while the others persuaded the Victims to go to a different location. Little and Fernandez then joined Dex and Johnson, and they drove to an alley at 15th and Cypress, with the Victims following behind. The four men then exited Little's vehicle. Johnson saw Fernandez talking to one of the Victims. Johnson heard a gunshot. Johnson started firing at the Victims' vehicle. Johnson testified that Dex was also firing his twelve-gauge shotgun at the Victims' vehicle. One of the Victims crawled from the alley out of Johnson's sight. Dex and Fernandez followed and Johnson heard a few more shots. The four men returned to Little's vehicle, then left the alley and went to Little's house where they were joined by Clarkson.

Neal testified at the evidentiary hearing that Toney brought Johnson's deposition to the jail, read portions of it to Neal, and underlined some portions prior to the entry of his guilty plea. Neal testified that Toney showed him where Johnson testified that a person named Dex was shooting at the truck. Neal admitted that his middle name is Dax.

Toney testified during the motion hearing that he did not leave a copy of Johnson's deposition with Neal until after his guilty pleas, explaining that he did not want it to be read by someone who might use it against Neal. Toney testified that he knew Neal went by the nickname Dax. In addition, Toney testified that he and Neal had numerous conversations regarding Johnson's anticipated trial testimony.

The motion court made the following findings of fact: Neal testified during his guilty plea hearing that he had not been promised anything or coerced to enter a guilty plea; Neal testified during his guilty plea hearing that Toney had answered all of his questions, provided him with all the discovery and police reports, and that they had enough time to discuss the multiple charges against him; Neal testified during his guilty plea hearing that he felt Toney had done everything he wanted him to do and there was nothing that he wanted him to do that Toney had not done; Neal testified during his motion hearing that Toney had gone over Johnson's deposition in advance of his guilty pleas; Neal personally participated in plea

negotiations with Toney and the State a week before his guilty pleas; Neal worked with Toney in conjunction with his family for three years to work out a plea agreement; and that Toney had visited Neal in the jail and had gone through Johnson's deposition with Neal tracing portions of the deposition with a pen. The motion court expressly found that "In the deposition Johnson identified 'Dex/Dax' as the shooter in [the First case]. [Neal] goes by the nickname 'Dax'; plea counsel did not leave the deposition in the jail to keep it from being disclosed to others."

The motion court found that Neal's guilty pleas were made voluntarily and intelligently. The motion court found Toney's testimony credible and Neal's testimony to be incredible on the subject of discussion of Johnson's deposition testimony. The motion court found Neal's allegation that he had not received Johnson's deposition was refuted by the record in that Neal acknowledged that Toney went through the deposition with him and even read it to him. The motion court found there is no evidence to support Neal's claim that Toney misrepresented any of the contents of Johnson's deposition relating to the offenses charged in the First case.

After a review of the entire record, we conclude that the motion court's findings are not clearly erroneous. It was not error to conclude that Toney did not affirmatively misrepresent Johnson's deposition testimony. Neal's "quarrel" with Toney's alleged characterization of Johnson's testimony as a "positive identification" is illusory. Toney precisely and accurately told Neal how Johnson testified, showing him the passages in Johnson's deposition Toney believed relevant. Even if Toney characterized Johnson's testimony as a "positive identification," his expression amounted to nothing more than an opinion about the import of Johnson's testimony. Neal had equal access to Johnson's testimony and an equal opportunity to independently characterize its potential weight.

Neal argued during his motion hearing that the other co-defendants would have testified at trial that the shooter was a friend of Johnson's, and that Johnson's deposition testimony that he did not know Neal exonerated him. There are several problems with Neal's argument. First, the only evidence of the co-defendants' purported testimony came from Neal. The motion court found Neal to be not credible. We defer to the motion court's credibility determinations. *Stacker*, 357 S.W.3d at 303. Second, the argument ignores Toney's testimony that all of the co-defendants were planning on testifying *against* Neal. Third, even if the other co-defendants would have

testified as Neal claims, Johnson's testimony that he and Neal were not "friends" would not exonerate Neal, and would at best create a basis for arguing that Johnson's identification of Neal as the shooter was mistaken, notwithstanding Johnson's reference to the shooter by both Neal's given and street names.

Neal also emphasizes that Johnson's deposition testimony referred to the shooter as "Dex" which is different from his street name/middle name "Dax." This discrepancy is immaterial given Johnson's association of the nickname to a person sharing Neal's given name. Though Neal argues that Johnson did not know if the names "Dex" and "Arion O'Neal" [sic] referred to one or two people, the record simply does not support this contention. When Johnson was asked, "Do you know what Dex's name is?" he responded unequivocally "They referred to him as Arion O'Neal [sic]." Moreover, Neal ignores that by his own admission, Toney went through, and even underlined, the portions of Johnson's deposition addressing his identification of Neal. Neal thus knew well before his guilty pleas that Johnson claimed the shooter's street name was "Dex." The significance, *if any*, to be attached to the difference between "Dex" and "Dax" would have been apparent to Neal before he pled guilty.

Neal has failed to demonstrate that Toney's actions fell below an objective standard of reasonableness such that they affected the voluntariness of Neal's guilty plea and that there was a reasonable probability that but for Toney's actions, Neal would not have pled guilty but would have proceeded to trial. Thus, the motion court's findings are not clearly erroneous [f.n 7]

> [f.n. 7] Neal includes in the argument portion of his brief an additional contention that the motion court's finding that a post-conviction proceeding was not a proper vehicle for examination of newly discovered evidence (in reference to the affidavit of Johnson) was clearly erroneous. This claim of error was not included in Johnson's point relied on and preserves nothing for our review. Rule 84.04(e); *Bott v. State*, 353 S.W.3d 404, 410 n.8 (Mo. App. S.D. 2011). Moreover, the photograph was not introduced into evidence before the motion court. There is no way to know whether the alleged photograph even exists.

Point two is denied.

## Point I

For his first point, Neal contends that the motion court erred in denying his post-conviction motion because he was denied effective assistance of counsel in that Toney had a conflict of interest with Neal. Neal claims that Toney had a conflict of interest because he acted contrary to Neal's interests by cross-examining Neal, and by testifying for the State, on Neal's claim that Toney coerced him into pleading guilty by misrepresenting Johnson's deposition testimony, and that in the course of doing so, he divulged confidential client communications. Neal claims that but for Toney's conduct, there is a reasonable probability that the trial court would have allowed Neal to withdraw his guilty pleas and proceed to a jury trial. We disagree.

The motion court found that Neal's claim *per se* failed to raise a viable claim of ineffective assistance of counsel under Rule 24.035 because Toney's examination of Neal occurred after the guilty plea was entered, and Toney's "conflict of interest," if any, could not have impacted the voluntariness of Neal's plea. The motion court's conclusion is technically inaccurate. "A claim of ineffective assistance of counsel at sentencing following a guilty plea is a 'cognizable' claim under Rule 24.035." *Cherco v. State*, 309 S.W.3d 819, 825 (Mo. App. W.D. 2010)  [25] (citing *Griffin v. State*, 937 S.W.2d 400, 401 (Mo. App. E.D. 1997)). "Thus, the two-pronged test from *Strickland* applies equally to claims of ineffective assistance of counsel arising out of a sentencing hearing." *Id.*

Though the trial court erroneously stated the law, its technical error is harmless under the facts and circumstances of this case. The trial court correctly found that Toney's examination of Neal *after* his guilty pleas were entered could not, as a matter of practicality, have impacted the voluntariness of Neal's guilty pleas. And we have already dismantled Neal's claim that his guilty pleas were involuntary and unknowing as a result of his alleged reliance on Toney's misrepresentation about the import of Johnson's deposition testimony.

The issue, therefore, is not the voluntariness of Neal's guilty plea, but whether Toney's cross-examination of Neal and testimony as a witness for the State during the sentencing phase of the proceedings while Toney still represented Neal created a conflict of interest rising to the level of ineffective assistance of counsel. As observed, the two prong *Strickland* test applies equally to this claim of ineffective assistance of counsel.

***Performance Prong***

To establish the performance prong based on an alleged conflict of interest, Neal must show that an ***actual*** conflict of interest adversely affected Toney's performance. *Cooper v. State*, 356 S.W.3d 148, 155 (Mo. banc 2011). "'In order to prove [an actual] conflict of interest, something must have been done by counsel or something must have been forgone by counsel and lost to defendant, which was detrimental to the interests of defendant and advantageous to another.'" *Id.* (citations omitted). The motion court found that Neal failed to meet his burden of demonstrating an actual conflict of interest that adversely affected Toney's performance. We agree with the motion court's conclusion.

Neal asserts, with facial plausibility, that it was an actual conflict of interest for Toney to cross-examine him, and to testify as a witness for the State, in lieu of simply remaining silent, in the face of Neal's motion to withdraw his guilty pleas [f.n. 8] based on Toney's alleged ineffective assistance of counsel.

> [f.n. 8] The first motion to withdraw his guilty pleas raised only Neal's assertion that he was not aware that he could face life in prison.

Neal's argument fails to take into consideration, however, that at the moment he alleged that Toney's ineffective assistance of counsel supported his right to withdraw his guilty pleas, Neal waived the attorney-client privilege with respect to Toney's representation of his interests. *Stuckey v. State*, 756 S.W.2d 587, 593 (Mo. App. W.D. 1988) (citing *Lansdown v. State*, 472 S.W.2d 342, 346 (Mo. 1971)). It is as a result of this waiver of the privilege that trial counsel routinely testifies in post-conviction proceedings contrary to a *former* client's interests.

We recognize, however, that Neal first raised his claim of ineffective assistance, and thus first waived the attorney-client privilege on the subject of Toney's representation, *before* judgment and sentence had been entered, and thus while Toney was still Neal's trial counsel. No Missouri case has squarely addressed whether the waiver of the attorney-client privilege which results from an allegation of ineffective assistance summarily permits trial counsel to simultaneously defend the allegation while continuing to represent the defendant without creating an actual conflict of interest. However, some guidance on this question of first impression can be drawn from decisions which have generally

addressed trial counsel's ability to respond to claims of ineffective assistance.

In *White v. State*, 939 S.W.2d 887 (Mo. banc 1997), a movant in a post-conviction proceeding alleged that trial counsel was ineffective because:

> [He] required and compelled movant to take the witness stand . . . to condone, verify and/or sanction trial counsels [sic] trial strategy, i.e., what witnesses to call, what questions to ask and what evidence [sic] to marshall [sic] in general. This improper conduct of counsel impermissibly [sic] invaded the provence [sic] of the attorney cliant [sic] relationship and exposed movant to cross-examination by the state.

*Id.* at 894. It is not entirely clear from the opinion when and under what circumstances trial counsel engaged in the complained of inquiries, though it can be reasonably assumed that they occurred as part of a routine guilty plea colloquy. In rejecting the claim of conflict of interest, our Supreme Court found:

> Inherent in every criminal case is counsel's desire to protect himself *from future claims of ineffective assistance of counsel* and the defendant's desire to preserve claims of ineffective assistance of counsel in the event of conviction. It is not improper for counsel to take steps to protect his own interest if in doing so, he does not disclose confidences of his client which harm the client's interest. There is no per se rule that prejudice will be presumed when counsel makes a record that has the effect of refuting *subsequent claims* of ineffective assistance of counsel.

*Id.* (emphasis added). *White* thus holds that *active* trial counsel, without creating an actual conflict of interest, can permissibly make a record generally designed and intended to negate his *current* client's *future* ability to assert *unspecified* claims of ineffective assistance of counsel. The question is whether the logic of *White* naturally and logically extends to permit *active* trial counsel, without creating an actual conflict of interest, to make a record designed and intended to negate his *current* client's *present* assertion of a *specific* claim of ineffective assistance of counsel.

In *Pieron v. State*, 793 S.W.2d 618 (Mo. App. E.D. 1990), after his conviction in a jury trial, a defendant raised numerous allegations of ineffective assistance of counsel during his sentencing hearing. *Id.* at 619-20. In response, trial counsel defended his alleged failure to call certain witnesses on the basis that "I don't feel as though . . . it's my obligation to produce witnesses to perjure themselves in an alibi defense, and after [defendant], you know, indicated to me not that he was innocent but that he was wearing gloves and so would not have left the fingerprint [found by the police]." *Id.* at 620. The defendant, in a subsequent Rule 29.15 motion, contended that trial counsel's conduct breached his duty of confidentiality. *Id.* at 621. The Eastern District disagreed and concluded it did "not believe counsel was precluded . . . from revealing to the court movant's admission" where "the disclosure came after trial and was in direct response to movant's attack on counsel's failure to call witnesses who [counsel] believed would perjure themselves." *Id.* The court supported its conclusion by citation to *Stuckey* (where the complained of conflict of interest arose when attorney-client privileged documents were released to the State *in a post-conviction proceeding*), and by reference to Rule 4-1.6(b)(3) of the Rules of Professional Conduct which excepts from an attorney's duty of confidentiality the attorney's ability "to respond to allegations in any proceeding concerning the lawyer's representation of the client." *Id.*

The duty of confidentiality is indistinguishable from the duty to maintain the attorney-client privilege. Thus, the holding in *Pieron* that an attorney's duty of confidentiality is not breached by revealing privileged information to defend against a claim of ineffective assistance squares with the principle recognized in *Stuckey* that attorney-client privilege is waived when such claims are asserted. However, it does not necessarily follow that trial counsel can respond to allegations concerning his representation of a client by revealing privileged information without creating a conflict of interest. Because *Pieron* did not address this precise question, we are reluctant to read *Pieron* for the proposition that a defendant's waiver of the attorney-client privilege upon assertion of a claim of ineffective assistance *per se* negates the possibility of an actual conflict of interest should trial counsel defend the claim while still representing the defendant.

In *Scruggs v. State*, 839 S.W.2d 51 (Mo. App. E.D. 1992), a defendant in a Rule 24.035 motion alleged, among other things, that his trial counsel was ineffective because the "plea court allowed defense counsel to violate the attorney-client privilege when he testified before the sentencing court" in response to the defendant's

effort to withdraw his guilty plea because he had been misled by his trial attorney about his eligibility for probation. *Id.* at 52. Our Eastern District, again citing *Stuckey*, rejected this claim because "a claim of ineffective assistance of counsel waives all privilege." *Id.* Though rendered in a factually similar case, this holding (as was essentially the case in *Pieron*) addresses only the claim of breach of the attorney-client privilege. *Scruggs*, like *Pieron*, begs the unanswered question. Though an attorney is permitted to reveal attorney-client privileged information to defend against a claim of ineffective assistance, can the attorney do so while continuing to represent the defendant without creating an actual conflict of interest?

This question frames the tension inherent between an attorney's right to defend against a claim of ineffective assistance of counsel, and a defendant's constitutional right to effective assistance of counsel. The same tension is somewhat analogously present when a defendant is counseled to accept a guilty plea that is contingent upon the defendant's waiver of post-conviction remedies, including claims of ineffective assistance of counsel. In such a scenario, trial counsel is not merely laying the ground work in a general guilty plea colloquy to diffuse future unspecified claims of ineffective assistance, as was the scenario in *White*, but is instead encouraging his client to affirmatively waive claims of ineffective assistance of counsel, without regard to whether trial counsel knows or has reason to know that the defendant has a basis to assert such a claim.

In *Cooper*, our Supreme Court recently addressed whether trial counsel can so advise a defendant without creating an actual conflict of interest. The Court held that trial counsel's participation in a guilty plea which requires his client to waive post-conviction remedies does not *per se* create an actual conflict of interest as to deny the defendant's Sixth Amendment guarantee of assistance of counsel [f.n. 9]. 356 S.W.3d at 157. However, a defendant can "overcome the waiver of his or her post-conviction right to raise an ineffective assistance claim" if a motion court **determines there is a factual basis for the claim**. *Id.* at 155. In other words, the *potential* conflict of interest naturally present when trial counsel secures his client's waiver of ineffective assistance of counsel claims as a condition of a guilty plea will rise to the level of an *actual* conflict of interest only if it is determined that there is a factual basis for a claim of ineffective assistance of counsel. Applying this standard, the Supreme Court concluded on the facts before it that "Cooper has neither alleged nor proven the presence of an actual conflict of interest." *Id.* at 157.

[f.n. 9] The Supreme Court acknowledged the apparently inconsistent ethical constraints of Advisory Committee opinion 126 which provides, in part, that "[i]t is not permissible for defense counsel to advise the defendant regarding the waiver of claims of ineffective assistance of counsel" as "such advice would violate Rule 4-1.7(a)(2)." *Cooper*, 356 S.W.3d at 156. However, the Supreme Court noted that "for unexplained reasons, Advisory Committee opinion 126 does not reference or discuss state and federal court decisions . . . that approve the waiver of post-conviction relief as a part of a plea bargain," calling into question how the Supreme Court would resolve a petition from an attorney requesting review of the Advisory Committee opinion as permitted by Rule 5.30(b). *Id.* at 156-57.

The Supreme Court's resolution of the tension at play in *Cooper* is instructive in this case. Here, there is no doubt that Neal's waiver of the attorney-client privilege upon the assertion of a claim of ineffective assistance of counsel created tension between Toney's continuing obligation to effectively represent Neal and Toney's right to defend himself against Neal's claim. This tension does not require us to conclude, however, that *every* assertion of a claim of ineffective assistance of counsel creates an actual conflict of interest requiring trial counsel to withdraw as a pre-condition to defending the claim. Nor does this tension require us to reach the corollary conclusion that a defendant's waiver of the privilege upon assertion of a claim of ineffective assistance of counsel *per se* negates the possibility of an actual conflict of interest should trial counsel defend the claim while continuing to represent the defendant. Instead, following the template described in *Cooper*, we believe the tension can be resolved as follows: Where a defendant claims ineffective assistance of counsel and thus waives the attorney-client privilege with respect to trial counsel's representation, trial counsel is entitled to defend himself against the claim without withdrawing, and no actual conflict is created, *unless* it is determined that there is a factual basis for the claim of ineffective assistance.

Were the rule to be otherwise, defendants would be motivated to abuse their constitutional right to counsel by levying suspect claims of ineffective assistance of counsel as an obstructive tactic at various points prior to the entry of judgment. We are not inclined to permit the calculation of whether an actual conflict of interest exists

to be dependent upon such manipulation. Moreover, it would be unrealistic to impose an obligation on trial counsel to withdraw every time a criminal defendant complains about counsel's representation. Nor can we demand (as Neal suggests) that trial counsel remain silent in response to a client's accusations of ineffective assistance when counsel would be free in a post-conviction proceeding to defend the accusations without recrimination.

In fact, expecting trial counsel to remain silent could place counsel in the position of violating Rule 4-3.3 of the Rules of Professional Conduct addressing counsel's obligation of candor toward a tribunal. *See Pieron*, 793 S.W.2d at 621-22. Rule 4-3.3(a)(3) provides in pertinent part that:

> (a)  A lawyer shall not knowingly:
>
> . . .
>
> (3) offer evidence that the lawyer knows to be false. *If* a lawyer, ***the lawyer's client***, or a witness called by the lawyer ***has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal***.

(Emphasis added.) Rule 4-3.3(c) provides that "[t]he duties stated in Rule 4-3.3(a) . . . continue to the conclusion of the proceeding and apply ***even if compliance requires disclosure of information otherwise protected by Rule 4-1.6***." (Emphasis added.)   Comment 11 to Rule 4-3.3 instructively notes:

> The disclosure of a client's false testimony can result in grave consequences to the client, including not only a sense of betrayal but also loss of the case and perhaps a prosecution for perjury. But the alternative is that the lawyer cooperates in deceiving the court, thereby subverting the truth-finding process that the adversary system is designed to implement. . . . Furthermore, ***unless it is clearly understood that the lawyer will act upon the duty to disclose the existence of false evidence, the client can simply reject the lawyer's advice to reveal the false evidence and insist that the lawyer keep silent.*** The client could in effect coerce the lawyer into being a

party to fraud on the court.

(Emphasis added.)

Clearly, our Rules of Professional Responsibility place great weight on counsel's obligation of candor toward the tribunal. The rule we have articulated similarly emphasizes candor, and balances several competing rights and interests: the constitutional right to effective assistance of counsel, the waiver of the attorney-client privilege upon assertion of a claim of ineffective assistance, trial counsel's general right to defend against a claim of ineffective assistance without breaching client confidences, and trial counsel's ethical obligation of candor toward the tribunal. Moreover, the rule articulated today does not prejudice a defendant with a meritorious claim of ineffective assistance involving trial counsel's conflict of interest. If there is a factual basis for a defendant's claim of ineffective assistance, then an actual conflict of interest will have been demonstrated, necessitating serious consideration of the relief sought by the defendant, and trial counsel's evaluation of the propriety of continued representation [f.n. 10].

> [f.n. 10] Affording the relief sought by a defendant who establishes an actual conflict of interest will remain subject to the trial court's discretion (if a factual basis for ineffective assistance is determined by the trial court) or to defendant's establishment of the *Strickland* prejudice prong (if a factual basis for ineffective assistance is first determined by the motion court in a post-conviction proceeding). See discussion, *infra*. Trial counsel's withdrawal as counsel of record upon a trial court's determination of an actual conflict of interest remains subject to the traditional requirements of client consent and/or court approval.

In this case, when Neal raised allegations about the effectiveness of Toney's representation in his motion to withdraw his guilty pleas, the attorney client privilege was waived, and Toney was entitled (if not obligated) to address the allegations [f.n. 11]. In fact, it is evident by the first question Toney asked of Neal during the hearing on Neal's motion to withdraw his guilty pleas that Toney had so informed Neal [f.n. 12]. Toney asked:

> Q: Mr. Neal, you understand that you are placing me as your lawyer in a very awkward position at this

point, right? We have talked about that?

A: Yes.

[f.n. 11] Although Neal generally claims that Toney divulged confidential communications during the hearing on Neal's motion to withdraw his guilty pleas, Neal has not specified any confidential communications that were divulged and as to which the attorney-client privilege remained attached following Neal's assertion of his claim of ineffective assistance of counsel.

[f.n. 12] Thus, even if Rule 4-1.7 (addressing conflicts of interest involving current clients) could be read to characterize Toney's defense of Neal's claim of ineffective assistance as a concurrent conflict of interest requiring Neal's "informed consent . . . in writing" as a condition to Toney's continued representation of Neal, we would conclude that this on the record exchange with Neal, who was under oath, comports with that requirement.

The trial court subsequently determined that there was no factual basis for Neal's assertion that he received ineffective assistance of counsel because Toney affirmatively misrepresented Johnson's testimony. The motion court identically concluded that there was no factual basis to support Neal's claim that Toney affirmatively misrepresented Johnson's testimony. Thus, Toney's cross-examination of Neal and Toney's testimony as the State's witness did not create an actual conflict of interest, and for purposes of this appeal, did not establish the *Strickland* performance prong for ineffective assistance of counsel [f.n. 13].

[f.n. 13] We are not necessarily endorsing by this Opinion Toney's decision to thoroughly cross-examine Neal or to permit the State to put him on the stand as a witness in response to his client's motion to withdraw his guilty pleas. However, from a practical standpoint, whether Toney's defense of the claim of ineffective assistance came into the record in this fashion, or upon inquiry by the trial court (a common occurrence), the effect would have been the same. ***We emphasize that in this, or in any***

> *case, whether trial counsel's conduct violates a Rule of Professional Conduct is a separate and distinct inquiry from whether a criminal defendant has been denied his constitutional right to effective assistance of counsel.* "'[B]reach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel.'" *Cooper*, 356 S.W.3d at 157 (quoting *Nix v. Whiteside*, 475 U.S. 157, 165, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986)).

The only authority cited by Neal (without explanation of its application) in support of his claim of conflict of interest is *Lomax v. State*, 163 S.W.3d 561, 564 (Mo. App. E.D. 2005). However, *Lomax* affords no support for Neal's case. *Id.* There, the issue was solely whether the motion court erred in denying Lomax an evidentiary hearing prior to denying his Rule 24.035 motion. *Id.* at 563.

Neal has failed to demonstrate by a preponderance of the evidence that Toney's actions fell below an objective standard of reasonableness as viewed in light of all of the circumstances and of the prevailing professional norms at the time of the alleged error. *Strickland*, 466 U.S. at 688-89. We cannot conclude that the motion court erred in rejecting Neal's claim that Toney had an actual conflict of interest, and thus rendered ineffective assistance of counsel, by defending Neal's allegations of ineffective assistance of counsel while continuing to represent Neal.

### Prejudice prong

In addition, Neal has failed to establish prejudice. Neal alleges that but for Toney's interference with his motion to withdraw his guilty pleas, there is a reasonable probability that the trial court would have granted his motion. Neal is essentially arguing that had Toney remained silent in the face of Neal's accusation of ineffective assistance of counsel, Neal would have prevailed on his motion to withdraw the pleas because the trial court would have agreed Toney's ineffective representation rendered Neal's guilty pleas involuntary. Neal affords us with no plausible explanation for this belief. In fact, Neal's belief is refuted by the record.

The trial court, in finding Neal's guilty pleas to be voluntary, and in refusing to permit Neal to withdraw his guilty pleas, cited to its extensive questioning of Neal during the guilty plea

hearing--questioning that negated Neal's claim of ineffective assistance of counsel independent of Toney's efforts to defend against the claim. The trial court noted that Neal was operating under the misapprehension that his co-defendants had not suffered consequences. The trial court was also aware of Neal's first motion to withdraw his guilty pleas, where Neal assured the trial court that the only basis for his request was that he had not been informed that he could be sentenced to life in prison. Finally, the trial court observed that Toney had done an outstanding job in negotiating Neal's collective guilty pleas, as "from what I have heard and seen these are cold-blooded murders that the State could have possibly proceeded with on murder one." As the trial court noted, "You are lucky you are not sitting here looking at life without parole."

The trial court's observations offered to explain its finding that Neal's guilty pleas were voluntary and could not be withdrawn never referred to Toney's defense of Neal's claim of ineffective assistance of counsel. The trial court's observations would have supported the trial court's denial of Neal's motion even had Toney remained silent in the face of Neal's claim of ineffective assistance of counsel.

Point One is denied.

### Conclusion

We affirm the motion court's judgment.

(Doc. No. 7, Ex. 6, pp. 9-29).

The resolution of grounds 1 and 2 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000). Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Grounds 1 and 2 are denied.

## <u>GROUNDS 3, 4, 5 & 6 – PROCEDURAL DEFAULT</u>

In ground 3, petitioner contends that plea counsel was ineffective for failing to counsel him on his right to appeal the trial court's denial of his Rule 29.07 motion.   In ground 4, petitioner contends that plea counsel was ineffective for being unprepared, and using coercive tactics to induce petitioner to plead guilty.   In ground 5, petitioner contends that plea counsel was ineffective for failing to investigate petitioner's case, and failing to offer petitioner an opportunity to review certain discovery materials before petitioner entered his guilty pleas. In ground 6, petitioner contends that plea counsel was ineffective for misrepresenting witness interview information, thereby unduly influencing petitioner to plead guilty.

Grounds 3, 4, 5, and 6 are procedurally defaulted.   In <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

<u>Id.</u> at 750.   Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977), and <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).   <u>Coleman</u>, 501 U.S. at 748-50.

A review of the record shows that, although petitioner presented these grounds in his amended Rule 24.035 motion, petitioner did not raise them on appeal from the denial of that motion.   Therefore, those claims are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his

claims will result in a fundamental miscarriage of justice.   <u>Coleman</u>, 501 U.S. at 750.   The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any valid explanation for why these grounds were not pursued on appeal from the denial of his Rule 24.035 motion and, therefore, has failed to demonstrate cause for his procedural default.   As a result, we do not consider prejudice.   The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted.   <u>Bowman v. Gammon</u>, 85 F.3d 1339, 1346 (8th Cir. 1996), <u>cert. denied</u>, 520 U.S. 1128 (1997).   To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with <u>new</u> reliable evidence. . . that was not presented at trial."   Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." <u>Id.</u>, <u>citing</u> <u>Schlup v. Delo</u>, 513 U.S. 298 (1995).   Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of grounds 3 through 6.   He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the <u>Schlup</u> standard for actual innocence.   <u>Id.</u>   Therefore, federal review of grounds 3 through 6 is barred.

Grounds 3 through 6 are denied.

## <u>CERTIFICATE OF APPEALABILITY</u>

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right."   To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong."   <u>Tennard v. Dretke</u>, 542 U.S. 274, 276

(2004). Because petitioner has not met this standard, a certificate of appealability will be denied. <u>See</u> 28 U.S.C. § 2254, Rule 11(a).

## **<u>ORDER</u>**

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.


    /s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE


Kansas City, Missouri,

Dated:  November 25, 2013.